IN RE INVESTIGATION OF THE GRAND JUROR INTO COVE MANOR CONVALESCENT CENTER, INC.
(2490)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued February 6—decision released July 30, 1985

*Louis B. Todisco,* with whom, on the brief, was *Stephen E. Ronai,* for the appellant (plaintiff Arnold J. Ryder).

*Richard J. Lynch,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant department of health services).

DUPONT, C.P.J. The plaintiff, a licensed nursing home administrator, was arrested, pleaded nolo contendere to five counts of larceny and was sentenced after a grand juror completed a private inquiry into medicaid provider fraud at the nursing home of which he was the administrator. The report of the grand juror, the

transcript, and all of the evidence relating thereto were sealed by court order. Thereafter, the department of health services instituted administrative proceedings against the plaintiff, charging him with unacceptable conduct as a nursing home administrator in violation of General Statutes § 19a-517 (b) (1). Under that section, a person licensed to practice as a nursing home administrator may be disciplined, including the revocation of his license, if found to have "engaged in fraud or material deception in the course of professional services or activities . . . ."

The plaintiff sought to prevent the report of the grand juror, the transcript and other evidence from being released to the department. The department, also referred to hereinafter as the defendant, cross applied to the trial court to allow such release and to release the witnesses and the plaintiff from any order of secrecy. The plaintiff appeals from the denial of his application and the granting of the defendant department's application.[1] We find error.

The plaintiff claims that the trial court erred (1) in not requiring the department to show a particular need and compelling circumstances before ordering the various releases, (2) in allowing the fruits of a grand jury investigation to be released to an administrative agency for use by it in a civil administrative proceeding and (3) in releasing witnesses from an order of secrecy so that they might testify before a state administrative agency.

---

[1] The state's attorney for the criminal grand jury investigation is not a party to this appeal. That office, however, took the position in the trial court that no documents should be released but that the witnesses should be released from any order of secrecy. Neither party has raised any jurisdictional problem with this appeal. Unlike *In Re Investigation of the Grand Juror into the Bethel Police Department,* 188 Conn. 601, 452 A.2d 935 (1982), the trial court's decision regarding release was not sua sponte but upon the application and cross application of the parties. It is, therefore, concluded that an appeal lies.

All of these claimed errors may be reduced to one issue. The question for resolution is what standard should be used to determine when sealed investigative grand juror materials may be made available to a civil governmental agency for use in a subsequent administrative proceeding against the target of a grand jury investigation after the grand jury has concluded its investigation, and after criminal charges against the target have been concluded by a judgment of guilty, following a plea of nolo contendere. No Connecticut case resolves this issue. The question raises the subsidiary question of whether federal case precedent should be followed and, if so, whether such cases require a preliminary showing by the agency of a particular and compelling need for the material or whether a balancing test weighing the traditional reasons for grand juror secrecy against the particular facts of the case will suffice. The trial court in this case did not require such a preliminary showing but, by using the reasons for the safeguarding of the confidentiality of federal grand juries as articulated in *United States* v. *Sells Engineering, Inc.*, 463 U.S. 418, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983), concluded that these reasons were of little force within the context of this case and that such force as the reasons might have were "outweighed by the public interest in the efficient functioning of the administrative process." In so concluding, the trial court looked to federal decisions for direction, but chose not to follow their path.

The plaintiff argues that the trial court erred in granting the department access to the grand jury materials, absent a showing of particularized need, for the purpose of preparing for and pursuing an administrative hearing on whether his license as a nursing home administrator should be revoked. He relies on federal case law for that proposition. *United States* v. *Baggot*, 463 U.S. 476, 479–80, 103 S. Ct. 3164, 77 L. Ed. 2d

785 (1983); *United States* v. *Sells Engineering, Inc.,* supra, 442–46; *Illinois* v. *Abbott & Associates, Inc.,* 460 U.S. 557, 103 S. Ct. 1356, 75 L. Ed. 2d 281 (1983). These cases all involve Rule 6 of the Federal Rules of Criminal Procedure.[2]

---

[2] Rule 6 of the Federal Rules of Criminal Procedure, in pertinent part, provides:

"(e) RECORDING AND DISCLOSURE OF PROCEEDINGS. . . .

(2) GENERAL RULE OF SECRECY. A grand juror . . . an attorney for the government, or any person to whom disclosure is made under paragraph (3) (A) (ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. . . .

(3) EXCEPTIONS.

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A) (ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury; or

(iii) when the disclosure is made by an attorney for the government to another federal grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct. . . .

(5) CLOSED HEARING. Subject to any right to an open hearing in contempt proceedings, the court shall order a hearing on matters affecting a grand

The investigatory grand jury in Connecticut is governed by General Statutes § 54-47.[3] General Statutes § 54-47 (g) provides that "the court shall direct whether, and to what extent, the report [of the grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury.

(6) SEALED RECORDS. Records, orders and subpoenas relating to grand jury proceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosure of matters occurring before a grand jury."

Rule 6 (e) (3) has been amended, effective August 1, 1985, in pertinent part, as follows:

(A) (ii) "such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law."

(B) "Any person to whom matters are disclosed under subparagraph (A) (ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule."

(C) (iv) "when permitted by a court at the request of an attorney for the government, upon a showing that such matters may disclose a violation of state criminal law, to an appropriate official of a state or subdivision of a state for the purpose of enforcing such law."

[3] General Statutes § 54-47, in pertinent part, provides:

"(a) Whenever it appears to the superior court for any judicial district that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed within the judicial district, said court may order an inquiry to be made into the matter, to be conducted before any judge, state referee, or any three judges of said court designated by it. . . .

"(g) At the conclusion of such inquiry the judge, referee or judges conducting the inquiry shall file with the court a report and the court shall direct whether, and to what extent, the report shall be made available to the public or interested parties. Any transcript of testimony taken at the inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report; provided any person accused of crime as a result of the inquiry shall have access at all reasonable times to the transcript of his own testimony given by him in such inquiry."

juror] shall be made available to the public or interested parties." Pursuant to the same statute, the trial court has the same power with reference to the transcript of the testimony. The trial court, pursuant to that authority, released the requested materials and the witnesses from their oath of secrecy.[4] The predecessor of General Statutes § 54-47 (g) was enacted in 1941. Public Acts 1941, No. 158.[5]

A rule on the federal grand jury was not contained in the Federal Rules of Criminal Procedure until the third draft of the rules, dated March 4, 1942, was circulated. *United States* v. *Sells Engineering, Inc.,* supra, 452–53, (Burger, C.J., dissenting); Orfield, The Federal Grand Jury, 22 F.R.D. 343, 346 (1959). The argument, thus, that General Statutes § 54-47 be interpreted in light of the decisional authority pertaining to federal grand jury disclosure is persuasive, not because the Connecticut statute was patterned on the federal rule but because both originate from the com-

---

[4] It is not certain that the witnesses were given an oath of secrecy. General Statutes § 54-47 (g) says nothing about documentary evidence or about witnesses in other proceedings. On its face, the statute only applies to the grand juror report and transcripts.

[5] Public Acts 1941, No. 158, provided: "Whenever it shall appear to the superior court in any county that the due administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed within the county, said court may order an inquiry to be made into the matter, to be conducted before any judge of said court or a state referee. . . . At the conclusion of such inquiry the judge or referee conducting the same shall file with the court a report and the court shall direct whether, and to what extent, such report shall be made available to the public or interested parties; and any transcript of testimony taken at such inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report; provided that any person accused of crime as a result of such inquiry shall have access at all reasonable times to the transcript of his own testimony given by him in such inquiry."

The bill, originally introduced by Harold E. Mitchell, a special assistant state's attorney involved in *State* v. *Hayes,* 127 Conn. 543, 18 A.2d 895 (1941), did not provide for access to the accused of a transcript of his testimony at the inquiry.

mon law requirement that grand jury testimony be secret. The indicting grand jury governed by federal rule and the investigatory grand jury governed by § 54-47 are similar in function.

Prior to the enactment of General Statutes § 54-47, Connecticut's courts had sought direction from federal case law on issues involving grand jury proceedings. *State* v. *Hayes,* 127 Conn. 543, 577–80, 18 A.2d 895 (1941); *State* v. *Kemp,* 126 Conn. 60, 67, 9 A.2d 63 (1939). Our Supreme Court, in the context of a grand jury proceeding pursuant to General Statutes § 54-45 (a), relying on federal case law, stated that "the traditional secrecy of grand jury proceedings is well entrenched in the common law—'older than our Nation itself,' *Pittsburgh Plate Glass Co.* v. *United States,* 360 U.S. 395, 399, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959) . . . ." *State* v. *Canady,* 187 Conn. 281, 287, 445 A.2d 895 (1982).

"Rule 6 (e) of the Federal Rules of Criminal Procedure codifies the traditional rule of grand jury secrecy." *United States* v. *Sells Engineering, Inc.,* supra, 425; *Illinois* v. *Abbott & Associates, Inc.,* supra, 566 n.11. That portion of the rule authorizing a court to disclose grand jury materials provides no substantive standard governing the issuance of such orders. *United States* v. *Sells Engineering, Inc.,* supra, 442–43. The United States Supreme Court has "consistently construed the Rule, however, to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted." Id., 443. The standard was set forth in *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 211, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979). The court commented: "Parties seeking grand jury transcripts under Rule 6 (e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that

their request is structured to cover only the material so needed." Id., 222. The United States Supreme Court also provided the typical instances where the particularized need is met, as where "a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.' Such use is necessary to avoid misleading the trier of fact. Moreover, disclosure can be limited strictly to those portions of a particular witness' testimony that bear upon some aspect of his direct testimony at trial." Id., 222 n.12.

An historical analysis of General Statutes § 54-47 is necessary so that the federal case law can be compared to the practice in Connecticut. Our Supreme Court has analogized the investigatory inquiry pursuant to General Statutes § 54-47 to the common law grand jury which could inquire into crimes. *State* v. *Moynahan,* 164 Conn. 560, 565, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *State* v. *Menillo,* 159 Conn. 264, 273, 268 A.2d 667 (1970). Indeed, the only material distinction between the two is that the common law grand jury had the authority or power to issue an indictment. *State* v. *Moynahan,* supra, 565. It is appropriate, thus, to examine the case law concerning Connecticut's common law grand jury.

In *State* v. *Fasset,* 16 Conn. 457 (1844), the defendant moved to quash the indictment handed down by the grand jury. In support thereof, the defendant sought to elicit testimony from the grand jurors and the witnesses before the grand jury impeaching the grand jury's verdict. Citing the policy of the law that such proceedings be in secret, the court ruled that the defendant's evidence was inadmissible.

Connecticut has limited the lifting of the veil of grand jury secrecy of the testimony before it to prosecutions for perjury and to contradicting witnesses. *State* v.

*Coffee,* 56 Conn. 399, 412, 16 A. 151 (1888). In that case, the admission of the grand juror's testimony concerning the defendant's declarations was upheld because they were not part of the grand jury proceedings. Id., 413. Those two cases consider the issue of grand jury secrecy in the context of the constitutional grand jury empowered to indict. *State* v. *Menillo,* supra, 274. The importance of the preservation of grand jury secrecy was reiterated in *State* v. *Kemp,* supra, 68, which considered grand jury secrecy in the context of the general investigatory grand jury known to the common law. In fact, the policy advanced there to provide for transcribing the testimony before the grand jury was to insure a record for any further prosecution for perjury. Id.

In *State* v. *Hayes,* supra, another case involving the general investigatory grand jury known to the common law, the defendants claimed that the trial court erred in denying their request to inspect the grand jury minutes. The court stated that "[e]ven where a defendant is indicted by a grand jury, he has no right to inspect the testimony taken before it and the matter is at most within the discretion of the trial court, to be exercised only for strong reasons and rarely, if ever, where the purpose is merely to assist him in preparing his defense." Id., 580. Again, the court recognized that the veil of secrecy was generally lifted only for prosecutions for perjury and for use in contradicting witnesses. Id.

Moreover, that case involved the defendants' request for the testimony of two of the state's witnesses because of an apparent contradiction between certain testimony elicited at the trial from that elicited before the grand jury. The trial court examined the testimony of the witnesses and released only the pertinent portions of the testimony to the defendants in the interests of preserving grand jury secrecy. Our Supreme

Court upheld this disposition, concluding that it was amply justified. Id., 601–602. The policy of grand jury secrecy is thus entrenched in the common law.

In the context of General Statutes § 54-45a which relates to an indicting grand jury, the secrecy of the testimony obtained during the proceedings before it remains inviolate unless, in the discretion of the trial court, it is persuaded that statements made there are inconsistent with statements made at trial, or that the testimony is needed to impeach a witness or to attack the credibility of a witness. *State* v. *Burns,* 194 Conn. 469, 472–73, 481 A.2d 1077 (1984); *State* v. *Maldonado,* 193 Conn. 350, 478 A.2d 581 (1984); *State* v. *Canady,* supra. In the latter case, the court stated that any change in the traditional secrecy of grand jury proceedings, which is well entrenched in the common law, must be strictly construed. Id., 287. Further, the discretion of the trial court exercised to permit disclosure should be for strong reasons only. *State* v. *Burns,* supra, 473. That case relies on *State* v. *Hayes,* supra, 580, which involved the common law grand jury for that proposition. "Particularized need" and the phrase "strong reasons" connote a similar standard for the exercise of the trial court's discretion.

All these cases form the backdrop on which General Statutes § 54-47 (g) must be interpreted, particularly since its language is virtually unchanged from that of its statutory predecessor of 1941. No radical departure from the long standing policy of preserving grand jury secrecy which is well entrenched in the common law is warranted unless the language of the statute unequivocally expresses such an intent. *Gomeau* v. *Forrest,* 176 Conn. 523, 527, 409 A.2d 1006 (1979); see *Illinois* v. *Abbott & Associates, Inc.,* supra, 572–73.

The Connecticut legislature has not attempted to change the basic precept of the common law which

guaranteed the concealment of grand jury proceedings, nor has it chosen to provide any guidelines for the release of a grand juror's report or the transcript of grand jury proceedings other than to state that the court "shall direct whether, and to what extent, the report shall be made available to the public or interested parties." Without statutory parameters, case precedent, both federal and state, must be the trial court's shepherd in determining what tethers may bind the discretion given to the court by the statute. Both Rule 6 and General Statutes § 54-47 provide for a general rule of secrecy. The scope of each, of necessity, lies in historical considerations and in judicial interpretation. See note, "Administrative Agency Access to Grand Jury Materials," 75 Colum. L. Rev. 162 (1975).

Federal cases have required a showing of "particularized need" before the traditional secrecy of grand jury proceedings may be disturbed and Connecticut cases have required a showing of "strong reasons." This court is persuaded that it is appropriate to consult federal case law in the absence of a Connecticut Supreme Court precedent and in the absence of any substantive state statutory guide. We thus hold that the public or interested parties seeking access to grand jury materials must first demonstrate a particularized need.

This holding is spawned not only by federal case law but by traditional considerations which form the basis for that case law. Secrecy is a safeguard for the grand jury process itself and prevents the use of that process as an instrument to aid in future civil proceedings. Grand juries are aids to the criminal justice system. To use grand jury material for civil purposes under the guise of present expediency, and without a compelling and special need, is to threaten important rights. "A number of serious consequences flow from the administrative agencies' increased access to grand jury materials. To the extent that access is gained to information

unobtainable by the use of the agencies' own investigative procedures, the limits on agency power which Congress sought to build into the statutes are circumvented." Id., 178–79.

A grand jury in this state has vast powers to conduct a general inquiry into criminal activity, without specifying a particular crime or person to be investigated. General Statutes § 54-47 is a legislative response to history and to a need of the public to prevent criminal activity and to prosecute those responsible for such criminal activity. The release of what is learned by such a massive intrusion on privacy, without the usual procedural and evidentiary protections available at trial, should only be sparingly granted to an administrative agency within specific judicial borders of discretion.

In this case the defendant has already been found guilty of five counts of larceny. The elements of larceny include (1) an intent (2) to deprive another of property and (3) the wrongful taking, obtaining or withholding of such property from an owner. General Statutes § 53a-119. The elements of wrongdoing for revocation of a nursing home administrator's license as described in General Statutes § 19a-517 (b) are not coterminous. Questions asked of the defendant and answered by him during the grand jury proceeding may have been relevant to the crime of larceny, and some may not have been relevant to the crime. Those without relevancy to the crime may, however, be relevant to the standards for revocation of the plaintiff's license. If this information could not have been obtained through use of the department's own investigative powers, to provide the department with access to it is, in effect, to give the department the powers of a grand jury. Without a particular or compelling need to do so, and without a legislative mandate to do so, the department is not entitled to the information.

To grant access to an agency of grand jury material is to invade the grand jury's secrecy, but to deny access to it may require a duplication of effort. Note, "Facilitating Administrative Agency Access to Grand Jury Material," 91 Yale L. J. 1614, 1617 (1982). Until the legislature enacts an amendment, however, to General Statutes § 54-57, it remains more important to preserve secrecy than to give an administrative agency access to material without some good cause, other than a claim of duplicative effort.

Although many of the reasons for secrecy of grand jury proceedings no longer obtain after the conclusion of the proceedings and after the conviction of crimes stemming from the proceedings, some do. Two reasons are the protection of witnesses from retaliation in the event that a conviction is had without a trial and the protection of the integrity of the functioning of future grand juries. Those witnesses who learn that their testimony was not sacrosanct will be deterred from future uninhibited testimony, as will others not involved in the particular grand jury process.

The trial court, after noting that most of the factors militating against disclosure were not present, concluded that disclosure was warranted because of the public interest in the efficient functioning of the administrative process. This argument advanced in support of access was rejected by the United States Supreme Court as in and of itself not justifying a breach of grand jury secrecy. *United States* v. *Sells Engineering, Inc.,* 463 U.S. 418, 431, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983).

The department in this case also asserted that access to the grand jury material is needed to insure that the plaintiff's testimony does not change. A similar argument was proffered in *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 211, 99 S. Ct. 1667, 60 L. Ed. 2d

156 (1979), and the Supreme Court stated that after the witness testifies at a deposition or at trial, his prior testimony should be examined and then the court should decide whether and to what extent disclosure is warranted. *Douglas Oil Co.* v. *Petrol Stops Northwest,* supra, 228–29. The trial court here did not defer acting until the plaintiff testified at the administrative proceeding, nor did it require the department to make an initial showing of a particular need or a compelling reason for release of the material.

This court finds that the trial court abused its discretion under the circumstances by granting access to the transcript and the report to the department.

The order concerning the release of the witnesses from any order of secrecy, the department correctly concedes, depends on the outcome as to whether access to the transcript should be granted. *State* v. *Fasset,* supra, 469–70; but see *State* v. *Coffee,* supra. This court therefore concludes that the trial court also erred in releasing the witnesses from any order of secrecy.

By holding that the trial court erred in releasing the grand juror's report and transcript since the department here failed to establish the requisite particularized need, this court does not foreclose the department from satisfying that requirement when this action is remanded to the trial court. Further, the department has not established that the discovery tools provided to it by statute will not suffice in yielding access to the same material that the department seeks through the release of the grand juror's report and the transcript proceeding. In exercising its regulatory jurisdiction over nursing home administrators, pursuant to General Statutes § 19a-14 (c), the department has the authority to "administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear,

to testify or to produce any book, record or document when so ordered, a judge of the superior court may make such order as may be appropriate to aid in the enforcement of this section . . . ." General Statutes § 19a-14 (a) (10).

Requiring the department to exhaust the discovery tools provided to it by statute and regulation before recourse to the grand juror's report and the transcript of the proceeding may avoid the affirmative mischief feared by the United States Supreme Court in *Sells,* which could result from carte blanche access to a grand juror's report and the transcript of the proceeding on the sole claim that the public interest in the efficient functioning of the administrative process mandated release. *United States* v. *Sells Engineering, Inc.,* supra, 431–35. Some of the concerns expressed by the United States Supreme Court in the release of grand jury testimony, absent a showing of particularized need, were that the integrity of the grand jury may be injured by the manipulation of the process to ferret out evidence useful in a civil proceeding, and the fundamental unfairness of allowing a governmental agency to bypass the discovery tools provided to it by statute and regulation, which contain procedural and substantive restraints on the agency's discovery junket, by permitting access to grand jury proceedings where the governmental body is relatively unregulated in its use of discovery techniques. Id., 432–34.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.